---
Lorillard *v.* Lorillard.
---

---

## LORILLARD *vs.* LORILLARD and others.

In 1853 D. the receiver of certain real estate, pursuant to an order of the court, executed a lease thereof to H., for 21 years from the 1st of May following, at an annual rent of $14,500; the lessee to pay all taxes and assessments, and to erect a building to cost at least $10,000, which was to belong to the owners of the land.  The building was erected at a cost of about $30,000.  Before the commencement of the term H. assigned the lease to M. for the whole term, save one day only.  The assignment was subject to the rents, covenants and conditions mentioned in the lease.  M. entered into possession and collected the rents.  He paid the annual rents to the receiver until May 1, 1855; at which time, he declined making any further payment of rent at the rate agreed, but offered to the receiver to surrender the lease, and take a new one at $8000 a year.  On the petition of the receiver, for advice and direction in the premises, it appeared that H. the original lessee, was irresponsible, and that more than three-fifths, in interest, of the owners of the property concurred in the application of the receiver and were in favor of accepting the offer of M., and nearly two-fifths in interest opposed it.  The court refused to give its assent to the arrangement.

*Held* also, that if M. the assignee, wished any favorable terms from the court, he should first pay all the rent in arrear, at the rate of $8000 a year, and all taxes and assessments, and surrender the lease; procuring a surrender from H. also.  That if the parties interested were willing to accept that inferior sum, then M. might be discharged from further liability; and that the receiver should thereupon immediately advertise the premises to lease, for the residue of the term, at auction.

*Held further,* that if M. did not consent to this, the receiver should immediately proceed to eject him and the occupants under him, by an action to recover the land and its profits; or in some other suitable way.

APPEAL from an order made at a special term, upon the petition of Ezra P. Davis, the receiver in this cause, on the 5th day of December, 1856.

Lorillard v. Lorillard.

George Lorillard, by his will, gave annuities of $500 each to certain of his grand nephews and nieces. These persons were not made parties to the suit involving the validity of his will; and consequently their annuities were not affected by the decision which declared the will void. (*See* 14 *Wend*. 294, 397.) These annuities are now eleven in number, or $5500 per year. It was conceded and declared, in both that suit and the partition suit, that these annuities were a legal charge upon the whole estate. Consequently, when the estate was divided, three lots, viz. No. 200 Broadway, 42 West street, and lot No. 212 Broadway, were set apart by order of the court, and placed in charge of Nicholas Dean, as receiver of the court of chancery, to let the same and receive the rents, and pay expenses, taxes and commissions; and then to pay the annuities and divide the surplus. The parcels 200 Broadway and 42 West street have since been sold by orders of the court, and the proceeds divided, and the lot 212 Broadway alone remains. This lot is on the northeast corner of Broadway and Fulton street, and contains 29 feet in width by 77 feet in depth. Mr. Dean, in January, 1853, leased this lot at auction for twenty-one years, to Edward H. Hudson, at a ground rent of $14,500—the lessee to erect a building which should revert to the receiver, and also to pay taxes, make repairs, pay insurance, &c. Hudson was irresponsible, and borrowed from Mr. Francis Morris the means to erect the building, and in March, 1853, assigned the lease to Morris for the residue of the term, (save and except the last day,) Morris also reserving the right to surrender the lease, if he should think proper, at any time after three years. Morris paid the rent until the 1st of May, 1855, and then declined to make further payments under the lease, alleging that the rent was an exorbitant one; and Mr. Dean, then the receiver, being advised that Morris was not legally liable on the covenants of the lease, and being also convinced of the equity of his application for a reduction of the rent, agreed, with the concurrence of many of the heirs, to apply to the court for power to reduce the rent to $8000. Upon Mr. Dean's decease, the present petitioner was appointed receiver, and he instituted

the present proceeding—with the concurrence of a majority of the heirs—in order to carry into effect and to secure the benefits of the arrangement made by Mr. Dean. The petition was referred to Mr. Ruggles, to take proofs; and upon return of his report, with the proofs annexed, Judge CLERKE, at special term, confirmed the report and ordered the receiver to accept a surrender of the old lease, and to give a new one on the terms proposed by Mr. Morris. From this order some of the heirs appealed.

*Benj. T. Kissam*, for the appellants.

*A. P. Man*, for the receiver.

*By the Court*, MITCHELL, J. Mr. Dean, the receiver of certain real estate in this cause, pursuant to an order of the court, in January, 1853, executed a lease of the property on the N. E. corner of Broadway and Fulton streets, to E. H. Hudson, for 21 years from the 1st of May following, unless certain annuitants should sooner die, at the annual rent of $14,500, payable quarterly; the lessee to pay all taxes and assessments, and to erect a building to cost at least $10,000, which was to belong to the owners of the land. The building was erected at a cost of about $30,000, probably including in that cost interest and rent during its erection. Francis Morris advanced to Hudson all the moneys expended by him on the premises, and as his security, took an assignment of the lease, in March, 1853, for the whole term, save only one day. The assignment reserves no rent to the assignor, is for no consideration but $1, and has, immediately after the *habendum* clause, the following words: "*subject*, nevertheless, to the *rents, covenants*, conditions and provisions therein also mentioned," with a proviso that Morris might surrender at the end of three years. Morris immediately entered into possession, and has collected all the rents. He paid the annual rents, to May 1, 1855, inclusive. He found (as is said) that the rents received by him would not pay the ground rent and taxes, and offered to the receiver, in May, 1855, to

Lorillard *v.* Lorillard.

surrender the lease and take a new one at $8000 a year, and the receiver is said to have agreed to apply to the court for authority to make such arrangement. In August following, Morris paid $2000, subject to the completion of such agreement. Since that time he has paid nothing, but has received the rents, and retained them. Mr. Dean died soon after that date, and the present receiver, Ezra P. Davis, was appointed in his place. In September last, he applied to the court for leave to carry out the arrangement proposed by Morris, so as to take effect as of the 1st of May, 1855. Mr. Morris then to pay the back rents at the rate of $8000 a year, and the taxes and assessments.

A little more than three-fifths, in interest, of the owners of the property, concur in the application of the receiver, and nearly two-fifths, in interest, oppose it. The referee, and the court at special term, have approved it. Still it appears to this court inexpedient to give its assent to such an arrangement. The rent of $14,500 was obtained at auction ; some persons bidding $14,000, and others running it up from that sum by $100 at a time, to the last bid of $14,500. There is no evidence that property has since fallen in value, or that if the same trial *by auction* should be made, the same rent, or one far exceeding $8000, could not be obtained; except that witnesses estimate the gross annual rents at from $10,500 to $15,000, and the annual expenses at an average of about $3750. The same witnesses would probably have put the same estimate on the property before it was leased at auction, and yet persons bid against the lessee to the amount of $14,000 and $14,400. And Mr. Morris then thought so favorably of the lease as immediately to take an assignment of it for all the term, except one day, as his security for nearly $30,000. As Hudson is, and probably was, entirely irresponsible, Mr. Morris must have valued the lease as worth to the lessee more than $30,000. Other persons may estimate it in like manner at auction, or at least think that after the $30,000 are expended on the premises they can manage it so that it will pay the rent obtained at auction in 1853, before that money was ex-

pended on it.   Under these circumstances, the court consider the only fair test of value is an auction.

It is said that Mr. Morris now offers to pay $8000 per annum now in arrear for nearly two years, and the taxes and assessments for the same period, and that for this advantage to the estate the three-fifths owners desire. to complete the arrangement with him ; and that he cannot be made liable as assignee, as the whole term was not assigned to him, and he did not covenant to pay the rent.   It is not necessary to decide whether he would be liable as assignee, or not, under the circumstances already detailed, and such others as they afford ground to infer.   There is just reason to infer that Hudson was the mere instrument of Morris, and that in fact no title of any kind was intended to vest in him.   Before his term was to commence, he had transferred his interest in it to Morris for the whole period except one day (the exception being of no benefit to him, and only intended to save Morris from liability as assignee.)   He never was in possession for a single day, or expended one dollar upon the premises, or received one dollar from it.   Morris immediately entered into possession, collected all the rents, and paid all such rent as has been paid to the lessor.   He alone offers to surrender the lease ; he alone has received and kept the rents since May 1, 1855.   Whether liable or not, under these circumstances, in the old common law action, as *assignee*, it is very possible that he may be liable now on a complaint showing all the facts, his liability to Hudson, Hudson's irresponsibility, and that the assignment was expressly subject to the payment of the rents.   If he could not be made liable after he surrendered the premises, it may be that while he continued in possession of the lands thus received by him expressly subject to the rents, he was bound to Hudson to pay such rents, or at all events to apply the rents received by him to such payment ; and that under our present system the lessor could enforce, in his own favor, that obligation to Hudson.   So, too, the rents being unpaid, ejectment lies to recover the lands ; and as Morris is the person in possession and collecting the rents, may they not be collected from him, in the

Lorillard v. Lorillard.

same action, under a claim for the mesne profits. As he is not a party to these proceedings, the court does not choose to express its opinion, definitively, on these matters.

To authorize the proposed arrangement, would encourage Mr. Morris and all other persons tenants under a lease sanctioned by this court, first to refuse to pay their rents, next to propose to substitute inferior obligations in place of those they had entered into, and then (as in this case) to urge that, inasmuch as they had taken their measures from the beginning, to reap all the benefits of the lease, and yet to evade its liabilities, and had kept back rents which they had collected and should have paid over, for nearly two years, it became the interest of the parties to acquiesce, and they might thus force the parties and the court to submit to their terms. If Mr. Morris wishes any favorable terms from the court he should first pay all the rent in arrear, at the rate of $8000 a year, and all taxes and assessments, and surrender the lease, procuring a surrender from Hudson also. And as it is understood that the parties interested are willing to accept that inferior sum, then he might be discharged from further liability. The receiver then should immediately advertise the premises to lease for the residue of the term, at auction, on the same terms mentioned in the present lease; except that the lease should require the present building to be sustained, or a new one equally good to be kept erected. Security should also be required for the payment of the rent, &c., either by one or more sureties, or by a deposit, of some kind.

If Mr. Morris does not consent to this, the receiver should immediately proceed to eject him and the occupants under him, by an action to recover the land and its profits; or in such other way as he may be advised. It is not proper now to say whether the court would not give summary relief against him, as one holding under the court, and subject to its jurisdiction.

The order appealed from should be modified accordingly.

[NEW YORK GENERAL TERM, February 12, 1857. *Mitchell, Roosevelt* and *Davies*, Justices.]